HURST, PURNELL & CO., et al. v. GEO. E. JONES et al.

1. CHANCERY PLEADINGS AND PRACTICE. *Evidence.* No part of an answer unsworn to, which has been withdrawn by consent of the court upon the ground that it was written by the solicitor and did not state the facts of the case, cannot be read as evidence against the defendant on the hearing of the case.

2. PLEDGE. *Sale of personalty. Mortgage.* A firm turned over to a creditor a stock of goods which the creditor was to sell to pay his debt and the balance, if any, to be paid to other creditors. It was called by both parties a sale, but no price was fixed upon the goods. It was well known the goods were insufficient to pay the creditor. *Held,* the transfer was not a sale or a mortgage, but a pledge, and the creditor was entitled to have his debt paid first out of proceeds, and balance, if any, other creditors would be entitled to.

---

FROM GREENE.

---

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

KIRKPATRICK and INGERSOLL & SHOWN for complainants.

ROBINSON & MALONEY and TEMPLETON for defendants.

DEADERICK, C. J., delivered the opinion of the court.

Complainants, Hurst, Purnell & Co., as creditors of George E. Jones & Co., filed their bill in the chancery court, at Greeneville, attaching a stock of goods, assigned, as alleged, to Thomas Lane, Sr., father in law of said Jones and father of Eliza Marsh, the partners constituting the firm of Geo. E. Jones & Co.

The bill alleges that the assignment is fraudulent in law and in fact void for want of registration, against them and other creditors. In the progress of the cause other creditors of Jones & Co., became co-complainants with Hurst, Purnell & Co.

The goods attached were replevied by Thomas Lane, Sr., and he answered separately, Jones and Marsh jointly, and William Lane separately.

Upon application of defendants they were allowed to amend or withdraw their answers and file other answers, which was done. The first answers were not sworn to, and were prepared by counsel, we infer in the absence of the parties. At all events, the chancellor gave leave to defendants to file other answers. In the answer first filed by Thomas Lane, Sr., the written transfer or bill of sale was made an exhibit to his answer and made part thereof, and it was insisted that the goods were not thereby conveyed in trust, but sold in payment of large debts theretofore paid and assumed by him for the firm of Jones & Co.

In the subsequent joint answer by all the defendants, it is denied that this instrument was accepted by Thomas Lane, Sr., as the contract between the parties, and averred that the goods were sold by parol agreement and delivered pursuant to such agreement. But that he refused to take the goods under said written instrument. The amount of debts assumed and paid by Thomas Lane, Sr., for Jones & Co., is stated at upwards of $2,200, and the value of goods sold and delivered at about $800.

On the hearing, the chancellor, over the objection

of the defendants, allowed complainants to read the answers of defendants first filed. As these answers had been for satisfactory reasons substantially declared by the chancellor to have been filed by counsel without the concurrence of defendants, and they were allowed to file other answers showing the facts in regard to the sale and transfer of said goods, we think they ought not to have been read as the admissions of parties when other answers were allowed to be filed upon the ground that the first filed were not, in fact, the statements of the parties themselves.

Jones states that no inventory of the goods or notes was taken, and no price fixed, but Lane was to give him credit for whatever he could realize from them.

Thomas Lane, Sr., deposed that the goods were inventoried some three weeks after the sale to him, and amounted to $1,000, and that he had kept an account of sales up to that time, and collectable accounts and notes amounted to about $50. No estimate of value was fixed on goods at time of sale. And he agreed if there was any surplus after paying his claims it was to be paid to the creditors of Jones & Co.

The testimony of these witnesses, it is insisted, establishes a contract similar to that contained in the written instrument, and is in legal effect, a parol assignment for the benefit of creditors.

The chancellor decreed that Jones & Co. made an assignment in trust of their entire stock of goods and choses in action to defendant Thomas Lane, Sr., both by parol and by unregistered written instrument, the

purpose and effect of which was to hinder and delay their creditors, the same was declared void and set aside, and declared that said Lane held as trustee, and held the same, or proceeds thereof, liable for the satisfaction of complainant's debts, and ordered an account to ascertain the value of goods.

From this decree the defendant Thomas Lane, Sr., has appealed by leave of the chancellor, to this court.

Both Jones and Lane insist that the transaction was a sale, and they state the facts connected with the transfer of the goods in substantially the same terms. They both agree that the goods were passed into the possession of Lane, to be sold by him for the payment of his own claim in the first instance, and then to pay other creditors, if any surplus.

They both say furthermore, that there was no price fixed upon the goods, but Lane was to hold and sell them until his debt was paid.

It is manifest, therefore, although both parties insist the transaction was a sale, that it was not in fact, an absolute transfer of the title to the goods by sale, for want of that essential element, in such a contract, of a definite price fixed at the time, or by such agreement on the terms as would enable the parties thereafter to ascertain the price by taking an inventory, etc.

It was doubtless, also, well known to both parties, that the goods were insufficient in value, to pay the amount of the indebtedness of Jones & Co. to Lane. Treating the written instrument as out of the case, and the contract of the parties as a parol agreement that Lane should take the goods, sell them, and pay

his own claim, and if any surplus, that it should be applied to other creditors, and assuming as facts established in the cause that the indebtedness of Jones & Co., to Lane was greater than the value of the goods, and that Lane, for three weeks, kept an account of sales, and then took an inventory and mingled the goods with others, so that afterwards they were not distinguishable therefrom, the question is, what were the rights of the respective parties, in respect to said goods?

We have seen that there was no absolute sale, though there was an actual delivery of the goods, primarily to sell and pay Lane's debt.

It is argued that the facts show an assignment by parol for the benefit of creditors, and such a contract is invalid. The statute requires all mortgages and trusts of personalty to be in writing, and registered to be valid against creditors, or purchasers for value, without notice: Code, sec. 2003. And if this contract be of the description insisted on by complainants, it would be invalid, and would present no impediment to subjecting the goods to the satisfaction of the complainant's claims.

The case of *McCready & Co.* v. *Haslock*, 3 Tenn. Chancery Reports, is very similar to this case in its leading features. In that case Morton had bought a stock of drugs at chancery sale, and owed a balance of $2,241.42 of the price. Burns and Overton were his sureties. He sold half his stock to Pulliam, and soon thereafter sold the other half to another Pulliam, and the first named Pulliam. Afterwards a rent note

falling due Burns and Overton paid it and took from Pulliams & Morton an instrument in writing, intended to secure the advance for rent and the sum they were liable for as Morton's sureties.    This instrument recites that "the undersigned, in order to secure the said Burns and Overton, the sum for which they were liable for Morton and the $500 advanced to pay rents, do bind ourselves to, and with the said Overton and Burns, that Morton shall be and act as receiver for Burns and Overton, and shall take and hold possession of all the drugs, medicine, etc., now in the drug store, keep the books, superintend the business, receive the money, and pay over to Burns and Overton, weekly, his receipts to be applied to the debts Burns and Overton are liable for, and to discharge the $500 paid for rent." A few days afterwards Pulliam agreed to surrender the drugs and furniture and house to Burns and Overton, and that Morton, receiver, should take the same and hold a lien on said drugs, etc., for balance due from Pulliam & Co., to Morton for said stock.

In the meantime, after the sale of the stock by Morton, executions were levied on the stock and it was insisted that the said instruments were mortgages or conveyances in trust, and were void for want of registration, as against creditors.    But the chancellor held that the transaction was not a mortgage, but a pledge of the goods, and that registration was not necessary to its validity, citing 4 Sneed, 467. The chancellor adds: "There was a sufficient consideration, and no intervening rights of third persons, to prevent

the execution of any legal plan resorted to by the parties for securing meritorious claims," and gave Burns and Overton so much of the fund as was necessary to indemnify and reimburse them, and gave the execution creditors the surplus.  A pawn or pledge is the delivery of the possession of goods, by a debtor to his creditor, to be kept till the debt is discharged: Sto. on B., sec. 286.

The term pawn or pledge is ordinarily confined to personal property, and where real or personal property is transferred by a conveyance of the title, as a security, it is a mortgage: *Id.*  It is essential in case of pledge that possession be given of the goods pledged.  But by a mortgage the title passes by the conveyance and registration: *Id.*, secs. 287, 297.  If the thing pledged is not redeemed within the stipulated time, the pledgee has a right to require a sale, or parties might direct the mode of selling: *Id.*, secs. 309, 317.  If there be an agreement as to sale by pledgee, it must ordinarily regulate the rights of both parties: *Id.*  And the pledgee may assign or transfer the goods to the extent of his interest: *Id.*, secs. 327–8.

Whether the transfer in this case be a sale, mortgage or pledge is a question of law to be determined upon the facts of the transaction.  It is not a sale because no price was fixed.  It is not a mortgage because there is no conveyance of the title in writing. It more nearly resembles a pledge, in that it transferred the possession of the goods to secure the debt of Lane, and authorized him to sell them to pay the debt, and this it was competent for the pledgor to do,

and the understanding that the surplus should go to other creditors, was nugatory, as it was well known there would be no surplus after paying Lane's claims. But if there should be, under the ruling in *McCready* v. *Haslock*, the other creditors would be entitled to the balance.

We are of opinion that all the parties to this transaction acted in the utmost good faith, that their sole object was to pay a just indebtedness, and that there was nothing illegal in the mode adopted to attain that object. The chancellor's decree will be reversed, and defendant, Thomas Lane, Sr., will be entitled to have his debt paid out of the goods, notes, etc., transferred to him, and if complainants desire it, the chancellor may direct an account, and if there be any surplus after paying said Lane's claims, the complainants will be entitled to it. Complainants will pay costs of this court, and the cause will be remanded.